1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

BARBARA A. HINKLE,

8                          Plaintiff,

Case No. C12-2128-RSM

9          v.

**REPORT AND
RECOMMENDATION**

10

CAROLYN W. COLVIN, Acting
11  Commissioner of Social Security,

12                          Defendant.

13        The Commissioner found Barbara A. Hinkle was at fault for overpayment of benefits.

14  Ms. Hinkle appeals the Commissioner's decision not to waive the overpayments.  As discussed

15  below, the Court recommends **REVERSING** the Commissioner's final decision and

16  **REMANDING** the matter for further administrative proceedings pursuant to sentence four.

17                          **BACKGROUND**

18        Ms. Hinkle has a college degree and has worked as a project manager for large

19  construction projects.  In 2003, she began receiving disability benefits.  In February 2009, the

20  Social Security Administration notified Ms. Hinkle she was overpaid in the amount of

21  $51,168.10 for the period spanning November 2006 to December 2008.  Ms. Hinkle does not

22  dispute she was overpaid in this amount, or that she performed substantial gainful activity during

23  the time period.  Tr. 15.  Rather she contends the overpayments should be waived because she

REPORT AND RECOMMENDATION - 1

1   was not at fault for the overpayments.  *Id.*  Ms. Hinkle's request for waiver was denied initially

2   and on reconsideration.  After conducting a hearing on April 7, 2011, the ALJ issued a written

3   decision that (1) found Ms. Hinkle was overpaid $51,168.10 in benefits during the period

4   November 2006 to December 2008; (2) rejected Ms. Hinkle's claim she was not at fault; and (3)

5   found the overpayment not subject to waiver and that Ms. Hinkle was liable for repayment of

6   $51,168.10.  Tr. 13-17.  The Appeals Council denied Ms. Hinkle's request for review making the

7   ALJ's decision the Commissioner's final decision.

8                                          **DISCUSSION**

9          The parties agree Ms. Hinkle was overpaid $51,168.10 in benefits for the period spanning

10  November 2006 to December 2008.  Tr. 14-15; 356-57.  They disagree whether the overpayment

11  should be waived.  The Commissioner is entitled to recover an overpayment.  20 C.F.R. §

12  404.501.  However, an overpayment may be "waived" if the claimant can show: (1) the claimant

13  is "without fault" for the overpayment, and (2) recovery would either defeat the purpose of the

14  Act, or be against equity and good conscience.  20 C.F.R. §§ 404.506(a); 404.507; 404.508;

15  404.509.

16         As to the first step of the waiver analysis, a claimant is at "fault" where the claimant (a)

17  makes an incorrect statement the claimant "knew or should have known to be incorrect," (b) fails

18  to furnish information he "knew or should have known to be material," or (c) accepts payment

19  the claimant "either knew or could have been expected to know was incorrect."  20 C.F.R. §

20  404.507.  In assessing whether an overpayment resulted from one of the three types of fault, the

21  Commissioner must consider "all pertinent circumstances," including the individual's age,

22  intelligence, and physical, mental, educational, or linguistic limitations.  *Id.*  This determination

23  is "highly subjective, highly individualized, and highly dependent on the interaction between the

REPORT AND RECOMMENDATION - 2

1   intentions and state of mind of the claimant and the peculiar circumstances of his situation."

2   *Elliott v. Weinberger*, 564 F.2d 1219, 1233 (9th Cir. 1977), aff'd in part and rev'd in part, 442

3   U.S. 682 (1979).  Additionally, the "fault determination requires a reasonable person to be

4   viewed in the claimant's own circumstances and with whatever mental and physical limitations

5   the claimant might have."  *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir. 1984).

6          However, a claimant will not be deemed to be without fault if the Commissioner has

7   evidence "which shows either a lack of good faith or failure to exercise a high degree of care" in

8   informing the Commissioner of changed circumstances which could result in overpayment.  20

9   C.F.R. § 404.511.  Further, where the Commissioner may have been at fault in making the

10  overpayment, that fact does not immunize an overpaid claimant from the Commissioner's

11  attempt to recover overpayments, if the claimant is at fault.  This is because "fault" as the term is

12  used in the Commissioner's regulations, applies only to the claimant.  20 C.F.R. § 404.507.  If

13  the claimant was at fault the inquiry ends.  But, if the claimant shows he or she was without fault,

14  it must then be determined, at the second step of the "waiver" analysis, whether recovery of

15  overpayments would either defeat the purpose of the Social Security Act or be against equity and

16  good conscience.  20 C.F.R. 42 U.S.C. §§ 404.508 and 509.

17         Here, the ALJ found Ms. Hinkle was given adequate notice about substantial gainful

18  activity, trial work periods and other information bearing on her eligibility to receive disability

19  payments.  Tr. 15.  Though Ms. Hinkle did not contest receiving the notices she contended she

20  did not understand them due to her mental impairments.  The ALJ rejected Ms. Hinkle's

21  testimony that due to her mental impairments she was unaware of her duty to report changes in

22  her employment status, and also believed she "acted appropriately in collecting disability

23  benefits in addition to substantial work earnings."  *Id.*  Instead, the ALJ found Ms. Hinkle

REPORT AND RECOMMENDATION - 3

1  "understood that work activity and timely reporting would affect her benefits because she knew

2  enough to notify the SSA after she had been working at Northwest Hospital for 4 months."  Tr.

3  16.  The ALJ concluded Ms. Hinkle's failure to report job changes "highlights" that "she

4  knowingly accepted disability payments to which she was not entitled."  *Id.*

5         Ms. Hinkle's claim that she is not at fault revolves around mental health problems.  The

6  ALJ acknowledged Ms. Hinkle "has mental impairments" but stated "I do not agree with her

7  argument, however, that her impairments affected her ability to understand and process

8  information."  *Id.*  The ALJ reached this conclusion on the ground Ms. Hinkle was college

9  educated, worked in "highly skilled, demanding roles" between 2006 and 2008, managed her

10 family's finances, and was her daughter's payee and primary caregiver.  *Id.*  The ALJ concluded

11 "the evidence does not establish that the claimant's mental impairments prevented her from

12 understand the circumstances of the overpayments," and that she is therefore at fault for causing

13 the overpayments.  *Id.*

14        The ALJ's finding would be supported by substantial evidence if the record in this case

15 contained only Ms. Hinkle's uncorroborated claim that her mental impairments prevented her

16 from understanding the circumstances of the overpayment.  *See Anderson v. Sullivan*, 914 F.2d

17 1121, 1123-24 (9th Cir. 1990) (ALJ may disregard self-serving statements of claimant that are

18 unverified).  But this is not such a case.  Rather, this is a case in which the record contained

19 medical and other evidence indicating Ms. Hinkle's mental impairments impaired her and that

20 the ALJ failed to mention, failed to discuss, and failed to consider this evidence in discounting

21 Ms. Hinkle's claim that her mental impairments render her not at fault.

22        The record shows that while Ms. Hinkle was hired to perform highly skilled and

23 demanding roles, she decompensated and began exhibiting symptoms of severe mental

REPORT AND RECOMMENDATION - 4

impairment during the overpayment period.  For instance on March 31, 2008, her employers

noted that at 10:00 am, on that day, Ms. Hinkle could not be found at the workplace though her

shoes and purse were found in the office's fourth floor lobby.  Ms. Hinkle's husband called the

employer later that day indicating Ms. Hinkle had walked 11 miles from the workplace to her

home and was wondering whether the employer could locate a large sum of cash Ms. Hinkle

claimed was missing.  Tr. 268.  Based on this incident, Ms. Hinkle was placed on medical leave

for nearly two months.  *Id*.  Later in August, 2008, Ms. Hinkle's employer found her lying on a

couch, shirt askew, and shoes off.  Ms. Hinkle indicated she was dizzy, having flashbacks, and

feeling confused and disoriented.  *Id*.  Because Ms. Hinkle continued to have mental health

problem, her employer conducted a *Loudermill* hearing to give Ms. Hinkle the chance to

respond to, explain, or refute her employer's conclusion that her employment should be

terminated.  At the hearing, Ms. Hinkle made comments such as she was the "leader of a free

union," that there was a "family trust" that allowed members to "listen in," and that the "electoral

college" was listening in.  Tr. 287.  Following the hearing, Ms. Hinkle's employer recommended

termination.

In addition to observations made by Ms. Hinkle's employers, the record contains medical

records from May 2008 and April 2009.  The May 2008 intake summary from the Community

Psychiatric Clinic described Ms. Hinkle's thought processes as "loose associations," "paranoid,"

and "delusions."  Tr. 295.  Though the intake describes Ms. Hinkle as normal in some respects, it

also noted she had impaired memory, judgment and insight.  *Id*.  The intake noted "most of what

[Ms. Hinkle] said was impossible to follow due to loose association –  very disorganized

thoughts.  [Ms. Hinkle] has no insights into these symptoms at this time."  Tr. 297.

By April 2009, Ms. Hinkle's mental health problems had become so severe she was

1    admitted for inpatient psychiatric care.  Her in-patient records indicated:

2            she describes bizarre beliefs about some entity controlling event
             happening around, a trust set up by her father that somehow
3            continues emotional/physical abuse in childhood perpetrated by
             her mother, and a belief that lab data can be manipulated and care
4            are controlled by past owners, depending on the gas.  Her paranoia
             is extensive, elaborately complicated and has clear behavioral
5            impact.

6    Tr. 313.

7           The ALJ's failure to consider all of the relevant evidence of record that had a bearing on

8    Ms. Hinkle's credibility and testimony that her mental impairments excuse her from "fault" was

9    not harmless.  First, an ALJ must explain why "significant, probative evidence has been

10   rejected," and must explain why uncontroverted medical evidence is rejected.  *Vincent v.*

11   *Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  The ALJ failed do this.

12          Second, if the record showed Ms. Hinkle's testimony was unsupported or contrary to the

13   medical evidence, the ALJ's rejection of her testimony would have been proper.  *See Burch v.*

14   *Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence is a relevant

15   factor that the ALJ can consider in his credibility analysis).  But the opposite was the case here.

16   Rather than a lack of evidence, there existed evidence in 2008 indicating Ms. Hinkle was

17   suffering severe mental impairment during the time period at issue.  There was also medical

18   evidence from 2009 which though retrospective in nature was relevant; this is because the

19   symptoms documented in Ms. Hinkle's 2009 in-patient psychiatric commitment echoed the

20   symptoms described in the 2008 Community Psychiatric Clinic records.  In any event, a medical

21   opinion should not be disregarded solely because it is retrospective in nature.  *Smith v. Bowen*,

22   849 F.2d 1222, 1225 (9th Cir. 1988); *see also* Social Security Ruling ("SSR") 83-20 ("In some

23   cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a

REPORT AND RECOMMENDATION - 6

1    disabling impairment(s) occurred sometime prior to the date of the first recorded medical

2    examination, e.g., the date the claimant stopped working.").

3           Third, there was lay evidence indicating Ms. Hinkle's mental impairments severely

4    impaired her during the relevant period.  Lay testimony as to a claimant's symptoms is

5    competent evidence an ALJ must take into account, unless the ALJ expressly determines to

6    disregard such testimony and gives reasons germane to each witness for doing do.  *Lewis v.*

7    *Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for disregarding lay witness

8    testimony must be specific.  *See Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1053 (9th Cir.

9    2006).  A lay witness provides an important source of information about a claimant's

10   impairments, and an ALJ can reject it only by giving specific reasons germane to each witness.

11   *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999).  None of this

12   occurred here.

13          In short, the ALJ committed legal error by discounting Ms. Hinkle's testimony without

14   properly considering all of the relevant evidence of record, and without giving any reason to do

15   so.  Where the ALJ errs by failing to provide any reason for rejecting relevant evidence, the error

16   is harmless only if the court "can confidently conclude that no reasonable ALJ, when not making

17   the same error as the ALJ, could have reached a different disability determination."  *Stout*, 454

18   F.3d at 1055-56.  Given the record, the Court cannot confidently conclude a reasonable ALJ,

19   considering all of the evidence could not reach a different determination.  This is a case in which

20   an ALJ could find Ms. Hinkle performed certain actions, work for instance, that indicated she

21   had the wherewithal to understand her Social Security disability eligibility reporting

22   requirements, but that she nonetheless did not understand, or, did not or could not act on her

23   reporting requirements due to mental illness.  Accordingly, the Court concludes the ALJ's error

REPORT AND RECOMMENDATION - 7

1   in discounting Ms. Hinkle's testimony was not harmless and the matter must be remanded.

2          The Court also concludes the matter should be remanded for further proceedings.  The

3   Court may remand for waiver of overpayment where "the record has been fully developed and

4   further administrative proceedings would serve no useful purpose."  *See McCartey v. Massanari,*

5   298 F.3d 1072, 1076 (9th Cir. 2002).  The record here is not fully developed.  The ALJ did not

6   evaluate the medical and lay evidence of record, and thus it would be inappropriate for the Court

7   to evaluate and weigh the evidence in the first instance and leap-frog over determinations

8   normally reserved to the Commissioner.  Additionally, the Court cannot say that the medical and

9   lay evidence would indisputably lead a fact-finder to accept Ms. Hinkle's testimony that her

10  mental impairments render her without fault for the overpayment; they may but as noted above,

11  the ultimate decision whether they actually do is a determination reserved to the Commissioner.

12  Additionally, the current record contains evidence indicating that from March 2008 to 2009, Ms.

13  Hinkle exhibited symptoms consistent with a mental health condition that could be deemed

14  severely impairing.  But it is unclear exactly what Ms. Hinkle's mental condition was for the

15  remainder of the relevant time period which begins November 2006.  It could be that Ms. Hinkle

16  was less impaired prior to March 2008 which would tend to support a finding that she was not

17  without fault during that time period.  But that determination is for the Commissioner to address

18  in her review of the record, reevaluation of Ms. Hinkle's testimony and assessment of whether

19  the record needs further development.

20         As a final matter, the Court notes and rejects Ms. Hinkle's contention that her bankruptcy

21  moots the Commissioner's finding that she was at fault for causing an overpayment.  The sole

22  issue before the Court is whether the ALJ erred in finding Ms. Hinkle was at fault in causing an

23  overpayment; thus whether the overpayment was discharged in bankruptcy has no bearing on

REPORT AND RECOMMENDATION - 8

1 | this issue.

2 | **CONCLUSION**

3 |     For the foregoing reasons, the Court recommends **REVERSING** the Commissioner's

4 | decision and **REMANDING** the case for further administrative proceedings pursuant to sentence

5 | four.  On remand, the Commissioner should consider all relevant medical and lay evidence

6 | bearing on Ms. Hinkle's testimony that her mental impairments render her without fault for the

7 | overpayment; reevaluate Ms. Hinkle's testimony, and develop the record as deemed appropriate.

8 |     Any objections to this Recommendation must be filed and served upon all parties no later

9 | than **August 2, 2013.**  If no objections are filed, the matter will be ready for the Court's

10 | consideration on **August 9, 2013**.  If objections are filed, any response is due within 14 days

11 | after being served with the objections.  A party filing an objection must note the matter for the

12 | Court's consideration 14 days from the date the objection is filed and served.  Objections and

13 | responses shall not exceed twelve (12) pages.  The failure to timely object may affect the right to

14 | appeal.

15 |     DATED this 19th day of July, 2013.

16 |

17 |

    BRIAN A. TSUCHIDA
    United States Magistrate Judge

REPORT AND RECOMMENDATION - 9